Henry S. David (CA SBN 89297)
*hdavid@davidfirm.com*
Hayim M. Gamzo (CA SBN 307033)
*hgamzo@davidfirm.com*
The David Firm®
617 W. 7th Street, Suite 702
Los Angeles, California 90017
Telephone: (213) 550-4020

Annie S. Wang (CA SBN 243027)
*annie@wangalc.com*
Wang Law Corporation
1150 Foothill Boulevard, Suite E
La Cañada Flintridge, California 91011
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiffs/Creditors
SEIKO EPSON CORPORATION
and EPSON AMERICA, INC.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>ARTEM KOSHKALDA,<br><br>Debtor.<br><br>SEIKO EPSON CORPORATION and EPSON AMERICA, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>ARTEM KOSHKALDA, an individual,<br><br>Defendant. | Case No. 18-30016-HLB<br><br>Chapter 7<br><br>Adversary Proc. No. 18-03020-HLB<br><br>**MEMORANDUM OF LAW BY PLAINTIFFS SEIKO EPSON CORPORATION AND EPSON AMERICA, INC. IN SUPPORT OF THEIR MOTION TO STAY ADVERSARY PROCEEDING PENDING FINAL DETERMINATION OF RELATED ACTION**<br><br>Date: TBD<br>Time: TBD<br>Place: TBD |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................. 2

III. LEGAL ARGUMENT ..................................................................................... 6

    A.    This Court May, and Respectfully Should, Stay This Action Until There Is a Final Determination of the Infringement Action, Which Will Be Entitled to Preclusive Effect in this Adversary Proceeding ............. 6

IV. CONCLUSION ................................................................................................ 9

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

# TABLE OF AUTHORITIES

**Cases**

B & B Hardware, Inc. v. Hargis Industries, Inc.
— U.S. —, 135 S. Ct. 1293 (2015) ................................................................................ 8

Cedars-Sinai Med. Ctr. v. Shalala
125 F.3d 765 (9th Cir. 1997) ....................................................................................... 6

Church of Scientology v. U.S. Dep't of the Army
611 F.2d 738 (9th Cir. 1979) ....................................................................................... 6

Grogan v. Garner
498 U.S. 279 (1991) ..................................................................................................... 7

Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.
179 F.R.D. 264 (C.D. Cal. 1998), recons. den. (Apr. 15, 1998) .................................. 7

Husky Intern. Electronics, Inc. v. Ritz
— U.S. —, 136 S. Ct. 1581 (2016) ............................................................................. 8

iCore Global, LLC v. Millennium Commercial Advisors, LLC
2015 WL 179401 (N.D. Cal. 2015) ............................................................................. 7

In re Barboza
545 F.3d 702 (9th Cir. 2008) ....................................................................................... 7

In re Mucci
458 B.R. 802 (Bankr. D. Conn. 2011) ..................................................................... 7, 8

In re Trantham
304 B.R. 298 (B.A.P. 6th Cir. 2004) ........................................................................... 7

In re Wright
355 B.R. 192 (Bankr. C.D. Cal. 2006) ........................................................................ 7

Kremer v. Chemical Const. Corp.
456 U.S. 461, 466 (1982), leave to file pet. for reh.'g den. (Sep. 9, 1982) ................. 8

Luv N' Care, Ltd. v. Regent Baby Products Corp.
2014 WL 572524 (S.D.N.Y. 2014) ............................................................................. 6

Partners for Health and Home, L.P. v. Seung Wee Yang
488 B.R. 109 (C.D. Cal. 2012) (trademark infringement), appeal dismissed,
2016 WL 6994244 (9th Cir. Nov. 30, 2016) ............................................................... 7

Promera Health, LLC v. Vireo Systems, Inc.
2016 WL 861215 (D. Mass. 2016) .............................................................................. 7

Semtek Int'l Inc. v. Lockheed Martin Corp.
531 U.S. 497 (2001) ..................................................................................................... 7

Thomas & Betts Corporation v. Robroy Industries, Inc.
2015 WL 4718892 (C.D. Cal. 2015) ........................................................................... 7

V.V.V. & Sons Edible Oils Limited v. Meenakshi Overseas LLC
  2017 WL 616459 (E.D. Cal. 2017) ................................................................................8

Wilton v. Seven Falls Co.
  515 U.S. 277 (2011) ......................................................................................................6

**Statutes**

Cal. Civ. Code 3439.07(a)(1) .............................................................................................8

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

# I. INTRODUCTION

In December 2017, a federal district court in Nevada (the "Nevada District Court") presiding over a trademark infringement action (the "Infringement Action") by Seiko Epson Corporation and Epson America, Inc. (together, "Plaintiffs") orally granted Plaintiffs' motion for a default judgment for $12 million and injunctive relief against Debtor Artem Koshkalda ("Debtor") and others. Debtor filed his bankruptcy petition before the Nevada District Court entered its written judgment. Debtor has forthrightly admitted that he filed this bankruptcy case to obtain a "do over," so that he could relitigate, in California, the issues that he litigated and lost in Nevada, including setting aside his default, erasing his numerous discovery abuses and the resultant sanctions orders, etc., and obtaining discovery here that he failed to seek in the Infringement Action.

In this adversary proceeding (the "Adversary Proceeding"), Plaintiffs seek, among other things, to have Plaintiffs' claim against Debtor declared nondischargeable as a claim for "willful and malicious injury to [Plaintiffs'] property"—specifically, Plaintiffs' trademarks—due to the very acts that underlie the Infringement Action. Many of the factual and legal issues that Plaintiffs raise in their Adversary Proceeding are identical to those raised in the Infringement Action. Plaintiffs have moved for relief from the automatic stay under 11 U.S.C. section 362(a) to permit the Infringement Action—including Debtor's appeal—to proceed to final determination. The final determination in the Infringement Action will be entitled to preclusive effect in this Adversary Proceeding, will resolve many claims and issues in this Adversary Proceeding, and will moot other claims and issues. Plaintiffs therefore request that this Adversary Proceeding be stayed pending final determination of the Infringement Action, including any appeals by Debtor. Otherwise, the parties will engage in much law-and-motion and discovery in this Adversary Proceeding that will ultimately be unnecessary. Further, there possibly will be rulings in this Adversary Proceeding that are inconsistent with the

rulings in the Infringement Action. A stay until there is a final determination of the Infringement Action eliminates these negative possibilities.

## II. STATEMENT OF FACTS

On September 8, 2016, Plaintiffs commenced the Infringement Action.[1] In that Action, Plaintiffs assert claims against Debtor and his companies and other co-conspirators for trademark infringement, counterfeiting, unfair competition, and related claims.[2]

The Nevada District Court repeatedly made findings that Plaintiffs likely would prevail on their claims in the Infringement Action. For example, the Nevada District Court issued an *ex parte* seizure order of products Plaintiffs asserted infringed their trademarks, were counterfeit, or otherwise were contraband, and a preliminary injunction.[3] On September 15, 2016, and October 26, 2016, Plaintiffs and the U.S. Marshals executed on the seizure order, and raided the defendants' counterfeiting factory and warehouses, during which Plaintiffs and the U.S. Marshals seized a huge volume of counterfeit merchandise, counterfeit packaging, elements used to manufacture such counterfeit merchandise, and related documents (the "Seized Items").[4] The Nevada District Court also issued orders freezing defendants' assets, impounding their bank accounts and permitting Plaintiffs to attach certain of defendants' assets (collectively, the "Freeze Orders"), held Debtor in contempt, and issued a warrant for Debtor's arrest.[5]

---

[1] Request for Judicial Notice ("RfJN"), Ex. 1 (Infringement Action Docket Sheet, p. 1).
[2] RfJN, Ex. 2 (Second Amended Complaint [Dkt. 76 in the Infringement Action], ¶¶ 9-10).
[3] RfJN, Exs. 3 (TRO & Asset Seizure Order [Dkt. 9 in the Infringement Action]) and 4 (Preliminary Injunction [Dkt. 33 in the Infringement Action]).
[4] RfJN, Exs. 5 (Declaration re Seizure [Dkt. 17 in the Infringement Action]) and 6 (Second Declaration re Seizure [Dkt. 34 in the Infringement Action]).
[5] RfJN, Exs. 7 (Asset Seizure and Impoundment Order [Dkt. 159 in the Infringement Action]), 8 (Amended Asset Seizure and Impoundment Order [Dkt. 251 in the Infringement Action]), 9 (Contempt Order [Dkt. 250 in the Infringement Action]), and 10 (Arrest Warrant [Dkt. 252 in the Infringement Action]).

The initial temporary restraining order/seizure order gave Debtor the right to inspect the Seized Items.[6] But, Debtor elected not to exercise that right, which expired on entry of a preliminary injunction.[7] In this Court, Debtor repeatedly has stated that he did not conduct the inspection because he did not have counsel due to the Freeze Orders.[8] That assertion, like many of Debtor's assertions, is simply false: The temporary restraining order/seizure order was issued on September 13, 2016 (and amended on September 15, 2016); the Freeze Orders were not issued until August 22, 2017, and October 27, 2017; Debtor had counsel through August 4, 2017.[9]

Debtor also elected not to use his discovery rights to inspect the Seized Items.[10] Indeed, Debtor did not conduct any discovery in the Infringement Action.[11] The discovery cutoff date in the Infringement Action is long past (notably, a mere five days before Debtor's counsel withdrew).[12]

Due to Debtor's repeated discovery abuses, the Nevada District Court issued terminating sanctions against Debtor and other defendants.[13] Plaintiffs then moved for entry of default judgment for $12 million in statutory damages for willful

---

[6] RfJN, Ex. 3 (TRO & Asset Seizure Order, ¶ 6:25-7:3 [Dkt. 9 in the Infringement Action]).
[7] Declaration of Annie S. Wang ("Wang Decl."), ¶ 3.
[8] Declaration of Henry S. David ("David Decl."), ¶ 6(A).
[9] RfJN, Exs. 1 (Infringement Action Docket Sheet), 3 (TRO & Asset Seizure Order [Dkt. 9 in the Infringement Action]), 7 (Asset Seizure and Impoundment Order [Dkt. 159 in the Infringement Action]), and 8 (Amended Asset Seizure and Impoundment Order [Dkt. 251 in the Infringement Action]).
[10] Wang Decl., ¶ 4.
[11] Wang Decl., ¶ 4.
[12] Wang Decl., ¶ 4; RfJN, Ex. 1 (Infringement Action Docket Sheet).
[13] RfJN, Exs. 11 (Minutes of Proceeding [Dkt. 84 in the Infringement Action]), 12 (Order Granting Motion to Compel and for Sanctions [Dkt. 88 in the Infringement Action]), 13 (Report and Recommendation Granting Motion for Case Terminating Sanctions [Dkt. 112 in the Infringement Action), 14 (Minutes of Proceeding [Dkt. 136 in the Infringement Action], 15 (Order Granting Motion for Sanctions [Dkt. 137 in the Infringement Action], 16 (Order Adopting and Accepting Report and Recommendation [Dkt. 160 in the Infringement Action], and 17 (Order Granting Motion for Sanctions [Dkt. 277 in the Infringement Action]).

infringement and various equitable remedies.[14] On December 18, 2017, the Nevada District Court orally granted that motion.[15]

Shortly thereafter, on January 5, 2018, Debtor filed his voluntary petition, commencing his bankruptcy (the "Bankruptcy").[16] The Nevada District Court subsequently entered the default judgment for $12 million, a permanent injunction, and other relief against all defendants, including Debtor.[17] Then, in violation of the automatic stay, Debtor filed a notice of appeal from that default judgment.[18]

On February 8, 2018, Plaintiffs moved in this Bankruptcy and the bankruptcy of one of Debtor's companies, ART, LLC ("ART"), for relief from the automatic stay to permit, among other things, Debtor's and ART's appeal to proceed (the "Motions for Relief").[19] Plaintiffs and the trustees in the bankruptcies of Debtor and ART reached an agreement with respect to the granting of Plaintiffs' Motions for Relief.[20] The Bankruptcy Court continued the hearing on those Motions to June 28, 2018 to allow the trustees to abandon or sell the appeal rights and purported claims against Plaintiffs.[21]

In opposition to the Motions for Relief, Debtor and ART sought the right to inspect the Seized Items.[22] Then, in connection with seeking to buy appeal and other rights from their estates, Debtor/ART apparently asked the ART trustee to ask

---

[14] RfJN, Ex. 18 (Motion for Entry of Default Judgment [Dkt. 262 in the Infringement Action]).
[15] David Decl., ¶ 4, Ex. 28 (12/18/2017 Hearing Transcript, 41:4-5, 8).
[16] RfJN, Ex. 19 (Bankruptcy Petition [Dkt. 1 in the Bankruptcy]).
[17] RfJN, Ex. 20 (Default Judgment [Dkt. 304 in the Infringement Action]).
[18] RfJN, Exs. 21 (Notice of Appeal [Dkt. 306 in the Infringement Action]) and 22 (Order [Dkt. 325 in the Infringement Action]).
[19] RfJN, Exs. 23 (Plaintiffs' Motion for Relief from Stay [Dkt. 56 in the Bankruptcy]) and 24 (Plaintiffs' Motion for Relief from Stay [Dkt. 72 in Case No. 18-30014-HLB (the "ART Bankruptcy")]).
[20] David Decl., ¶ 6(D).
[21] David Decl., ¶ 6(D).
[22] RfJN, Exs. 25 (ART's Opposition to Motion for Relief from Stay, 2:6-7, 14-15, 3:8-10 [Dkt. 87 in the ART Bankruptcy), and 26 (Debtor's Opposition to Motion for Relief from Stay, fn. 3 [Dkt. 67 in the Bankruptcy]).

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

Plaintiffs to allow inspection of the Seized Items.[23] Plaintiffs declined.[24] So, at the May 10, 2018 hearing on Plaintiffs' Motion for Relief, Debtor asked the Court to order such an inspection.[25] The Court stated that an inspection was a "red herring," and when Debtor persisted, and again asked for such an order, the Court denied that request.[26]

In addition, the Court stated at the May 10, 2018 hearing that Debtor may very well be bound by the consequences of his actions (or, as the Court noted, his "inaction") in the Infringement Action.[27] At every hearing, including the May 10, 2018 hearing, Debtor has refused to acknowledge that possibility, but has not explained why he should be given a "do over."

On May 1, 2018, Plaintiffs commenced this Adversary Proceeding, alleging the very same trademark infringement that underlies the Infringement Action and asserting that such infringement constitutes "willful and malicious injury to [Plaintiffs'] property," within the meaning of 11 U.S.C. section 523(a)(6).[28] Plaintiffs have requested that the California District Court withdraw the reference to move the Adversary Proceeding from the Bankruptcy Court to the California District Court, and then to transfer it from the California District Court to the Nevada District Court.[29]

---

[23] See RfJN, Ex. 27 (Trustee Janina M. Hoskins' "Response" to Motion for Relief from Stay, 2:16-18 [Dkt. 124 in the ART Bankruptcy]) David Decl., ¶ 5, Ex. 29.
[24] David Decl., ¶ 5, Ex. 29.
[25] David Decl., ¶ 6(B).
[26] David Decl., ¶ 6(B).
[27] David Decl., ¶ 6(C).
[28] Dkt. 1 in the Adversary Proceeding (Complaint).
[29] Dkt. 8.

Debtor now is using the Adversary Proceeding as another attempt to relitigate the issues from the Infringement Action, and to conduct the discovery that he failed to conduct in the Infringement Action.[30]

## III. LEGAL ARGUMENT

### A. This Court May, and Respectfully Should, Stay This Action Until There Is a Final Determination of the Infringement Action, Which Will Be Entitled to Preclusive Effect in this Adversary Proceeding

Courts have discretion to manage cases pending before them, including issuing stays when appropriate.[31] Plaintiffs respectfully submit that given the overlap of the Infringement Action and this Adversary Proceeding, and the advanced stage of the Infringement Action, this Court should conserve party and judicial resources and avoid the risk of inconsistent results by staying this Adversary Proceeding until there is a final determination of the Infringement Action. That final determination will have preclusive effect in this Adversary Proceeding, will resolve many issues and claims in this Adversary Proceeding, and will moot many other issues and claims.

Under the "first-to-file" rule, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."[32] "Three threshold factors should be considered in deciding

---

[30] See David Decl., ¶ 7, Ex. 30 (May 15, 2018 letter from Debtor's counsel).
[31] See, e.g., Wilton v. Seven Falls Co., 515 U.S. 277, 281-290 (2011); Luv N' Care, Ltd. v. Regent Baby Products Corp., 2014 WL 572524, at *1-3 (S.D.N.Y. 2014) (in the exercise of its inherent power to control the disposition of cases on its docket and upon its analysis of the relevant factors to be considered, the court granted defendant's motion to stay proceedings), aff'd, 774 F.3d 192 (3d Cir. 2014).
[32] Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997); see also Church of Scientology v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979) (This rule "serves the purpose of promoting efficiency well and should not be disregarded lightly").

whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues."[33]

The Supreme Court has held that the doctrine of collateral estoppel (or issue preclusion) is applicable in dischargeability proceedings.[34] Federal common law governs the claim-preclusive effect of all federal court judgments.[35] While the federal rule applied to federal judgments in diversity cases generally requires the application of the issue preclusion rules of the state in which the federal diversity court sits, federal issue preclusion law applies to federal judgments in federal question cases.[36] Trademark infringement indisputably may constitute "willful and malicious injury" under section 523(a)(6),[37] and under federal issue preclusion law, "willful and malicious injury" may be established through the doctrine of *res judicata* (or claim preclusion).[38]

Here, the Infringement Action was filed first, all parties in the Adversary Proceeding are parties in the Infringement Action, and both actions involve

---

[33] Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 270 (C.D. Cal. 1998), recons. den. (Apr. 15, 1998). See also Promera Health, LLC v. Vireo Systems, Inc., 2016 WL 861215, at *6 (D. Mass. 2016) (court stayed the case until a decision in a related action in Nebraska was rendered); Thomas & Betts Corporation v. Robroy Industries, Inc., 2015 WL 4718892, at *6 (C.D. Cal. 2015) (court stayed the proceedings pending a decision in another court); iCore Global, LLC v. Millennium Commercial Advisors, LLC, 2015 WL 179401, at *3-7 (N.D. Cal. 2015) (given an earlier filed action between the parties in a Colorado state court, the court granted defendants' motion to stay the federal proceeding).
[34] Grogan v. Garner, 498 U.S. 279, 284 n. 11 (1991).
[35] Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-508 (2001).
[36] See id.
[37] In re Barboza, 545 F.3d 702, 707-708 (9th Cir. 2008) (copyright infringement); Partners for Health and Home, L.P. v. Seung Wee Yang, 488 B.R. 109, 118-119 (C.D. Cal. 2012) (trademark infringement), appeal dismissed, 2016 WL 6994244 (9th Cir. Nov. 30, 2016); In re Wright, 355 B.R. 192, 211-213 (Bankr. C.D. Cal. 2006) (cybersquatting infringement).
[38] In re Mucci, 458 B.R. 802, 810-814 (Bankr. D. Conn. 2011) (granting summary judgment on "willful and malicious injury" claim for trademark infringement, based on district court judgment); In re Trantham, 304 B.R. 298, 305-306 (B.A.P. 6th Cir. 2004) (applying collateral estoppel to patent infringement judgment to declare judgment nondischargeable as "willful and malicious injury").

Debtor's infringing activities. The final determination in the Infringement Action will have preclusive effect on many of the issues and claims in this Adversary Proceeding and will moot other issues and claims.[39] Specifically, the final determination in the Infringement Action as to whether Debtor infringed Plaintiffs' trademarks will be *res judicata* in this Adversary Proceeding.[40] Indeed, the final determination in the Infringement Action may have preclusive effect on the key/dispositive issue whether Debtor's actions constituted "willful and malicious injury" to Plaintiffs' property—their trademarks.[41]

Preclusion doctrines, including *res judicata*, serve multiple public policies, including judicial and party economy and avoidance of inconsistent results.[42] Allowing the Infringement Action and the Adversary Proceeding to proceed simultaneously will violate those public policies. As for judicial economy, the court hearing the Adversary Proceeding will have to revisit the issues that the Nevada District Court has addressed and that the Ninth Circuit will address on appeal. Further, if Plaintiffs succeed in their claim in the Adversary Proceeding for

---

[39] For example, Plaintiffs seek declaration that their claims for Debtor's numerous fraudulent transfers are nondischargeable under 11 U.S.C. section 523(a)(2). Complaint [Dkt. 1], ¶¶ 27-30; Husky Intern. Electronics, Inc. v. Ritz, — U.S. —, 136 S. Ct. 1581, 1586-1590 (2016) (claim for actual fraudulent transfer is nondischargeable as actual "fraud"). Plaintiffs' fraudulent transfer claim is limited by the amount of their underlying claim for trademark infringement (Cal. Civ. Code 3439.07(a)(1)), and therefore if Plaintiffs prevail on their claim for willful and malicious injury to their property, Plaintiffs would have no motive or reason to pursue their fraudulent transfer claim. Likewise, in that scenario, Plaintiffs would have no reason to pursue their claims under 11 U.S.C. section 727(a), to block Debtor's discharge generally.

[40] V.V.V. & Sons Edible Oils Limited v. Meenakshi Overseas LLC, 2017 WL 616459, at *4-7 (E.D. Cal. 2017) (upon its grant of a motion to dismiss plaintiff's claims, vis á vis a specific trademark, the court ruled that its claims were barred by the doctrine of *res judicata*).

[41] In re Mucci, 458 B.R. at 810-814.

[42] B & B Hardware, Inc. v. Hargis Industries, Inc., — U.S. —, 135 S. Ct. 1293, 1302-1303 (2015); Kremer v. Chemical Const. Corp., 456 U.S. 461, 466, fn. 6 (1982), leave to file pet. for reh.'g den. (Sep. 9, 1982).

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

"willful and malicious injury to [their] property" due to Debtor's infringement of Plaintiffs' trademarks, Plaintiffs will not need to pursue their other claims, providing substantial judicial economies. As for party economy, obviously, not having to relitigate the issues in this Adversary Proceeding that the parties have already litigated in the Infringement Action, and that will be determined by the results in the Infringement Action, not a retrial on the underlying evidence, is the epitome of "party economy." Finally, although Plaintiffs are confident that the court hearing the Adversary Proceeding would reach the same results that the court hearing the Infringement Action reached, there is a theoretical risk of inconsistent rulings if both actions proceed simultaneously.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court stay this Adversary Proceeding until there is a final determination of the Infringement Action.

DATED: May 22, 2018

Respectfully submitted,

THE DAVID FIRM®

By: /s/ Henry S. David
Henry S. David
Attorneys for Plaintiffs and Creditors SEIKO EPSON CORPORATION and EPSON AMERICA, INC.